IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIMOTHY J. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07CV00261 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION OF
MAGISTRATE JUDGE ELIASON**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claims for Social Security disability insurance benefits and a period of disability, and supplemental security benefits. The Commissioner's denial decision became final on March 2, 2007, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge (ALJ). Plaintiff has filed a motion for summary judgment, Defendant has filed a motion for judgment on the pleadings, and the administrative record has been certified to the Court for review.

**The Plaintiff**

Plaintiff, who was 44 years old at the time of his alleged disability onset date, has a limited education but is able to communicate in English. According to the ALJ, Plaintiff alleged disability as of September 22, 2003.

**Plaintiff's Issue**

Plaintiff bases his complaint on the ALJ's failure to discuss a particular finding among his medical records, arguing that this finding has implications for the ALJ's decisions as to whether Plaintiff met a Listing,[1] his residual functional capacity (RFC), and his credibility.

**Discussion**

In reaching a decision on Plaintiff's claim, the ALJ followed the five-step analysis set out in the Commissioner's regulations. See 20 C.F.R. §§ 404.1520 and 416.920. Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Id. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that

---

[1] The "Listings," found at 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A), "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.' [Sullivan v. Zebley, 493 U.S. 521, 530 (1990).] In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing. Id., 20 C.F.R. § 404.1526(a). ... When a person claims a disability that is not contained in the listings, or a combination of disabilities, the [Commissioner] requires that the claimant demonstrate his disability, or that the combination of his disabilities, 'medically equal' a listed impairment. 20 C.F.R. § 404.1526(a)." Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990).

the claimant can perform considering his age, education and work experience.  Id.

The ALJ first found that Plaintiff had not engaged in substantial gainful activity at any time relevant to her decision. She next found that Plaintiff suffered from the severe impairments of peripheral artery disease ("PAD"); coronary artery disease ("CAD"), status-post stent placement; hypertension; pulmonary emphysema; and fibrosis, with ongoing smoking, tobacco, and nicotine dependence.  The ALJ determined that, although Plaintiff alleged a left upper extremity disorder, such impairment was not supported in the medical record.  She decided that Plaintiff's severe impairments did not meet or medically equal the requirements of any Listing.

The ALJ then determined that Plaintiff had the RFC to perform sedentary exertion with a sit/stand option that would allow him to change positions every 30 minutes for several minutes.  The ALJ added that Plaintiff would be able to push and pull with his left upper extremity only occasionally.  Further, Plaintiff's exposure to hazards should be limited because of his hypertension, and to pulmonary irritants due to his emphysema. Based on this RFC, the ALJ concluded that Plaintiff could not return to his past relevant employment.  However, relying on the testimony of a Vocational Expert, she found that Plaintiff could perform jobs which existed in significant numbers in the national economy.  Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The Court may not make credibility determinations, or substitute its judgment for that of the ALJ's. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted), or evidence which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

**Issue**

Plaintiff argues that the ALJ erred in not discussing the DLCO[2] reading from his pulmonary function test ("PFT"). As

---

[2] "DLCO" stands for a measurement of the diffusing capacity of the lungs for carbon monoxide. The measurement is used to establish the level of functional impairment in chronic pulmonary disease cases where other documentation does not show whether an impairment meets or is equivalent in severity to a listed impairment. See 20 C.F.R. pt. 404,
(continued...)

-4-

explained by Defendant, there is no requirement that the ALJ discuss each piece of evidence. See, e.g., Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ need not address every piece of evidence); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted .... An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (the ALJ is not required to discuss every piece of evidence so long as the record demonstrates that he considered it). It is obvious that the ALJ reviewed Plaintiff's PFT results as she expressly referred to them. (See Tr. at 16, 17.) Simply stated, this single finding does not have the significance which Plaintiff places upon it.

The DLCO apparently is only a secondary measurement; the Listings provide that a DLCO study should only be obtained "in cases in which there is documentation of chronic pulmonary disease, but the existing evidence, including properly performed spirometry, is not adequate to establish the level of functional impairment." Listing 3.00F(1). Plaintiff's forced expiratory volume ("FEV1") and forced vital capacity ("FVC") values were significantly better than those required to meet Listing 3.02. See Listings 3.02A and 3.02B. And there is no indication that Plaintiff's FEV1 and FVC values were insufficient to establish Plaintiff's level of

---

[2](...continued)
subpt. P, App. 1 § 3.00(F)(1).

impairment. Rather, the PFT was interpreted to reveal only a "*[m]ild* restrictive impairment." (Tr. at 182 (emphasis added); see also Tr. at 176 ("mild decrease in vital capacity").)

Further, Plaintiff's PFT revealed a DLCO of 43% of the predicted value, whereas Listing 3.02C requires a reading of less than 40%. While Plaintiff characterizes his DLCO as "nearly match[ing]" or "significantly close" to that required of the Listing (Pl.'s Br. at 5, 6), "nearly" or "close" are not sufficient. Moreover, the Commissioner points out that there should be at least two DLCO measurements, but here there is only one. (Def.'s Br. at 6.) Consequently, Plaintiff overestimates the relevance of this one non-qualifying DLCO measurement.

Finally, and perhaps more importantly, the Commissioner points out that the record as a whole fails to support a finding that Plaintiff's COPD is disabling. (Def.'s Br. at 8-12.) In his Disability Report, Plaintiff claimed to be disabled by his PAD and CAD only. (See Tr. at 69.) In a conversation with a state agency representative, Plaintiff admitted that, although he had been diagnosed with emphysema, he was not on oxygen and he did not use an inhaler. (Tr. at 79-80.) His daily activities included running errands, working on his car, and helping his father pile firewood. (Tr. at 80.)

In his "Request for Reconsideration," Plaintiff blamed his inability to work on poor circulation in his left leg. (Tr. at 27.) His stepmother attested that Plaintiff did light housework, cleaning, laundry and some light yard duty, and he shopped weekly.

(Tr. at 91, 92.)  Plaintiff's pharmacy record reveals no use of inhalers.  (See Tr. at 102-05.)  Even during his hearing, Plaintiff testified that he could not work because of chest pain, anxiety, and limited circulation in his leg.  (See Tr. at 246.)

Nor do Plaintiff's medical records support a finding that he is disabled by his COPD.  Plaintiff's alleged onset of disability coincides with complaints of chest pain.  (See Tr. at 112.) Generally, the shortness of breath he experienced was associated with these "attacks."  (See, e.g., Tr. at 118, 189, 194.) Plaintiff received no COPD treatment after his September 20, 2003 chest x-ray.  Two months after undergoing an intracoronary stent placement, Plaintiff was able to walk a moderate distance without any difficulty, even though he was not taking all of his medications.  (See Tr. at 191.)

At his consultative examination, Plaintiff again blamed only PAD and CAD for his inability to work.  (Tr. at 118.)  The doctor found that Plaintiff was in no respiratory distress, and diagnosed no respiratory ailment.  (Tr. at 119, 120.)  Plaintiff's lung examinations were typically normal.  (See, e.g., Tr. at 113, 115, 186, 190, 191, 195.)  At only one doctor's visit, almost 8 months after his alleged onset of disability, did Plaintiff detail respiratory difficulties.

As noted by the ALJ, during his PFT, Plaintiff did not appear to be short of breath either at rest or with exertion.  (Tr. at 16; see also Tr. at 174.)  "He was not easily fatigued, and did not wheeze or cough during the test."  (Tr. at 16; see also Tr. at

-7-

174.)  After his PFT, Plaintiff received only a prescription for an inhaler, for help with "wheezing [and] *episodic* shortness of breath."  (Tr. at 180 (emphasis added).)  In support of his RFC finding, the state agency consultant cited only to Plaintiff's PAD and stent placement.  (See Tr. at 219.)  Thus, the Court finds any error in the ALJ's failure to discuss the DLCO finding to be harmless, as there is substantial evidence to support the ALJ's Listing, credibility, and RFC findings.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (docket no. 11) be denied, that Defendant's motion for judgment on the pleadings (docket no. 12) be granted, and that Judgment be entered dismissing this action.

*/s/ Russell A. Eliason*
**United States Magistrate Judge**

August 20, 2008